**THOMPSON v. MOOR.  (No. 1189—5190.)**

Commission of Appeals of Texas, Section A.
March 13, 1929.

Robert L. Holliday, of El Paso, for plaintiff in error.

Jones, Hardie & Grambling, of El Paso, for defendant in error.

NICKELS, J.  Thompson is (and for many years has been) record owner of a certain 50-acre .tract on what is called the "island," between the Rio Grande river as it coursed in that neighborhood when the international boundary was established and the river in its present course (to the eastward).  The tract is, in form, a parallelogram, 119.56 varas wide (north-south) and 2,322.7 varas long (east-west), except that its eastern boundary (568 varas in extent) is coincident with the western bank of the river as presently located and meandered.

Moor claims the tract by ten years' prescriptive title (articles 5510, 5513–5515, R. S. 1925; article 5675 et seq. R. S. 1911), and in trespass to try title brought ·by him May 6, 1926, he was given title by the trial court. The judgment was affirmed by the Court of Civil Appeals.  4 S.W.(2d) 117.  Thompson, in petition in error, asserts that judgment should have been for him on account of various matters discussed (so far as deemed essential) herein below.

1. It is said that Moor did not prove that as much as one-tenth of the land had been "used for agricultural purposes * * * or for manufacturing purposes," etc.  In Thompson's favor we assume such lack of proof.  Except for the river bank on its eastern end, the tract is (and throughout the prescriptive period was) bounded ·on the west, north, and south by lands "owned and claimed" by Moor, and the whole of the adjoining lands and the tract in question (except for a small part of the latter) was inclosed by a fence.  This fence, in its course across the eastern end of the 50-acre tract, was located a short distance (say 60 feet) west of the western river bank, and generally conformed to the river's meanderings.  Segregating fences did not exist.  In that situation, Thompson (largely upon the supposed authority of Vergera v. Kenyon [Tex. Civ. App.] 249 S. W. 514; Id. [Tex. Com. App.] 261 S. W. 1009, and the supposed general purpose of the statute) says that his land was and is "entirely surrounded" by the "tract or tracts owned, claimed, or fenced" by Moor, and hence that the terms of article 5511 have (a) application and (b) are of such force as to preclude Moor.  In Thompson's favor we assume the result would be a consequence of article 5511, applied to the facts, if his tract were thus "entirely surrounded."

That the tract in question is not (in a literal sense) "entirely surrounded" by lands "owned, claimed, or fenced" by Moor is manifest. Whatever its nature, Moor's claim to this tract had and has relation to the tract as an entirety; hence that small part of the tract intervening the fence and the west bank of the river cannot ·be regarded as one of the "cir-

cumscribing" tracts (even if article 5511 does not mean that all of the "circumscribing" tracts must be within the fence). In Vergera v. Kenyon it appears that the limitation claim-ant owned lands bounding the tract claimed on each of its sides and throughout the extent of each of the sides. Since, as held, a point is without dimensions, the fact that a third party owned a tract one of whose corners was coincident with a corner common also to each of two of the "circumscribing" tracts and the tract claimed did not make it possible for the record owner to reach his land without passing over land owned by the claimant. But in the situation instantly presented Thompson could enter his premises from the river side without touching Moor's land, and it results that Vergera v. Kenyon is not authority for the proposition asserted.

True it is that Thompson, in entering his premises from the river side (and except for a distance of some 60 feet), would be obstructed by the fence which Moor had erected across the eastern end of the tract. But this merely exhibits one reason for declining to stretch article 5511 beyond its literal ranges. Erection and maintenance of a fence inclosing "circumscribing" tracts "entirely surrounding" the other tract is entirely consonant with ownership, or claim of ownership, of the "circumscribing" tracts of themselves; perforce, such conduct does not import (at least, does not necessarily import) claim to or hostile possession (if, in fact, actual possession) of the "surrounded" land. In such a case there is not an "improvement," etc., or other overt act, in direct reference to the land of another. But, in case of a tract not entirely surrounded, erection and maintenance of a fence inclosing it with the abutting tracts necessarily involves physical invasion, and conduct evidenced by overt acts which (unless done pursuant to agreement, etc.) projects notice of hostility. In our opinion, article 5511 has no application to the facts shown.

██ 2. By way of posturing the matter now to be considered, we assume in favor of Moor: (a) Peaceable possession for 10 years (articles 5510, 5514); (b) "cultivation, use or enjoyment" (article 5510); (c) overt acts, etc., sufficient, when viewed of themselves, to import notice of hostility, and thus to give to peaceable possession the added characteristic of adversity (article 5515; Craig v. Cartwright, 65 Tex. 413).

But peaceable possession, even when accompanied with acts whose prima facie import is that of hostility, may not, in truth, be adverse, for intent (of the possessor) may bring his acts, etc., into consonance with recognition of the privileges of true ownership. Intent, then, is a controlling factor. Purpose kept intimate (through lack of overt acts, etc.) to the possessor is, of course, nonobligatory upon the true owner, for in such event there is lack of requisite notoriety. Article 5515; Ti-

tel v. Garland, 99 Tex. 201, 87 S. W. 1152; Evans v. Templeton, 69 Tex. 375, 6 S. W. 843, 5 Am. St. Rep. 71; Scott v. Rodgers (Tex. Com. App.) 6 S.W.(2d) 731, 734. But design, which does not include purposed adverse claim, manifestly, is binding upon the possessor, whether published or not. Satterwhite v. Rosser, 61 Tex. 166; Warren v. Frederichs, 83 Tex. 380, 18 S. W. 750; Houston Oil Co. v. Jones, 109 Tex. 89, 198 S. W. 290; Kirby Lumber Co. v. Conn, 114 Tex. 104, 263 S. W. 902. Hence evidence of declarations (prior to suit) expressing or implying amicable purpose, or evidence of acts importing such purpose, are admissible as against the possessor, and when admitted are sufficient (at least) to raise an issue of fact, however strongly contradicted by his declarations of intent given on the trial. Satterwhite v. Rosser, supra; Warren v. Frederichs, supra; Nerio v. Christen (Tex. Civ. App.) 189 S. W. 1038.

Actual knowledge of intent is confined, ex vi necessitate, to the person whose acts come under review. Of all persons, he is the only one in a position to declare the truth as a fact. In his expressions he may or may not state the truth; a possessor, e. g., may declare his entry, etc., was amicable, but it may, nevertheless, have been hostile, or he may declare a hostile intent, whereas, in fact, the intent may have been peaceable. But because of the exclusiveness of his knowledge and the lack of any reason to forget the truth, his declarations of intent (in so far as the declarations are against his interest) given upon the trial of his case ought to be regarded as conclusive upon him. There is apparent basis for a different view of declarations (of intent) made by him before trial and contradicted by him upon trial; but we have before us declarations given in testimony by the possessor upon trial of the present case, and the question suggested (cf. Nerio v. Christen, supra) need not be determined; we refer to it in response to the argument that no more than an issue of fact is made by proof of contradictory assertions by the possessor.

The matter is taken from range of such cases as Stevenson v. Barrow (Tex. Com. App.) 291 S. W. 1101; Harrison v. Orr (Tex. Com. App.) 296 S. W. 871; Southern Casualty Co. v. Hernandez (Tex. Civ. App.) 297 S. W. 544. In respect to hostility, the declarations regarded (in A., T. & S. F. Ry. Co. v. Abraham [Tex. Civ. App.] 209 S. W. 265, and cases therein cited, and in Bruce v. Washington, 80 Tex. 368, 15 S. W. 1104, etc.) as being inconclusive did not, in effect, contradict the plainly asserted hostile intent to claim to marked boundaries, etc. Moor's testimony on the point in mind is stated in the opinion of the Court of Civil Appeals, and by reference we adopt that statement.

██ In our opinion: (a) The whole of (this) relevant testimony is qualified by and summarized in this declaration: "I have been

claiming it ever since I have been down there against everybody, until such time as they might show me they had rights or something there." A practical interpretation (exhibited in testimony) is that record title on various occasions was a "showing that they had rights or something there"; and a fact known to Moor throughout most (if not all) of the prescriptive period was that of record title in Thompson. (b) The testimony, thus qualified and summarized, and with the tremendous weight attributable to its source (i. e., as coming from the person upon whom lay the burden of proof in respect to each basis of limitation title, and who had exclusive knowledge of the state of mind involved), discloses possession in subordination to true ownership. Cases cited above; Texas W. Ry. Co. v. Wilson, 83 Tex. 157, 18 S. W. 325; Mhoon v. Cain, 77 Tex. 316, 14 S. W. 24.

3. The tax suit, judgment, and sale therein are presented as interrupting peaceableness of possession (article 5514, R. S. 1925), but decision of the question is unnecessary, and in respect to it we neither express nor imply a conclusion.

4. Accordingly we recommend that the judgments of the district court and Court of Civil Appeals be reversed, and that judgment be rendered for D. A. Thompson, plaintiff in error, denying Lee Moor, defendant in error, all relief prayed by him.

CURETON, C. J. The judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.